UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JUDITH MISCHLER,

       Plaintiff,

v.                                                        Case No. 16-C-1567

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

       Defendant.

## DECISION AND ORDER

This is an action for judicial review of the final decision of the Commissioner of Social Security denying Judith Mischler's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. 42 U.S.C. § 405(g). Plaintiff challenges the decision by the Administrative Law Judge (ALJ) denying her benefits, arguing that he failed to follow Social Security Administration (SSA) rulings and regulations and is not supported by substantial evidence. For the following reasons, the decision of the Commissioner will be affirmed.

## BACKGROUND

On September 18, 2006, Mischler filed an application for SSI, claiming she had been disabled since her diaphragmatic hernia surgery on January 16, 2004. Her application was denied initially and on reconsideration, and she requested a hearing. ALJ John Kays conducted a hearing and on September 18, 2008, issued a decision in which he concluded Mischler was in fact disabled because of severe impairments consisting of depression and chronic abdominal pain. R. 66, 68. Mischler was

thereafter awarded SSI benefits. Her benefits were later suspended because she was over the resource limit for SSI eligibility. R. 76–77. According to Mischler, "they found out about a business [she] and her husband owned and she was cut off after that and the couple had to sell the business." R. 955. In any event, because the suspension was over a year, a new medical determination was required. R. 77, 176.

Mischler filed a new application for SSI on October 25, 2013, again claiming that she had been disabled since her hernia surgery on January 16, 2004, due to "surgery on diaphragm and pain ever since." R. 74. SSA denied Mischler's application on December 20, 2013. After her application and request for reconsideration were denied, Mischler requested an administrative hearing. ALJ Joseph D. Jacobson held a hearing on December 2, 2015. Both Mischler, who was represented by counsel, and a vocational expert (VE) testified at the hearing. R. 38–62.

At the hearing, Mischler, who at the time was 44 years old, testified that she lived alone in her house in Pearson, Wisconsin. She completed the tenth grande of high school but eventually earned a GED and a CNA certificate. Mischler worked first as a CNA and then owned a sawmill with her husband until 2004. She testified that since her diaphragmatic hernia surgery, she has had a constant, unbearable burning pain in her chest. R. 48. She also testified that she suffers from depression and anxiety. R. 51.

In a decision dated January 5, 2016, the ALJ determined Mischler was not disabled. R. 23–32. The ALJ concluded Mischler met the insured status requirements and had not engaged in substantial gainful activity since October 25, 2013, the application date. The ALJ found Mischler had four severe impairments: affective disorder, anxiety disorder, spine disorder, and pain disorder with chronic abdominal pain. R. 25. At step three, the ALJ determined that Mischler's impairments

did not meet or medically equal any listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.* He reasoned that the medical evidence of record does not support a finding that Mischler experiences symptoms or limitations of a severity sufficient to meet or medically equal the requirements set forth in listings 1.04, 12.04, and 12.06. As to Mischler's mental impairments, the ALJ recognized that Mischler had depression and anxiety but concluded her mental impairments did not meet or medically equal the criteria of listings 12.04 and 12.06. He accepted and adopted "the opinions and supporting rationale of state agency physician Ellen Rozenfeld, Psy.D. in finding that the claimant has only mild restriction in activities of daily living; mild difficulties in social functioning; and moderate difficulties with regard to concentration, persistence or pace." R. 27. He expressly noted that these limitations "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." R. 28.

The ALJ ultimately determined Mischler had the following residual functional capacity (RFC):

> the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except occasional pushing, pulling, climbing of ramps and stairs, stooping, and crouching; no climbing of ladders, ropes, or scaffolds; frequent balance, kneel, and crawl; is limited to simple, routine, repetitive tasks in a low stress job (defined as one with only occasional decision making or changes in the work setting required); only occasional interaction with the public and coworkers (with no tandem tasks); no piece work or assembly line-type work; and must be allowed to be off task up to 10 percent of the work day, in addition to regularly scheduled breaks.

R. 28. With these limitations, the ALJ found that Mischler was unable to perform any past relevant work. R. 30. Nevertheless, he concluded she is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, such as mail clerk, order filler, and shipping clerk. Based on these findings, the ALJ concluded Mischler was not disabled within the

3

meaning of the Social Security Act. R. 32. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Mischler's request for review on October 4, 2016. R. 1. Thereafter, Mischler commenced this action for judicial review.

**LEGAL STANDARD**

The statute authorizing judicial review of decisions of the Commissioner of Social Security states that the findings of the Commissioner as to any fact, "if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and his conclusion. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Asrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

4

**ANALYSIS**

**A. Weight Afforded to Medical Source Statements**

Mischler first argues the ALJ failed to appropriately weigh the opinion of her physician, Dr. Sylvia Dennison. Dr. Dennison reported she had treated Mischler for twelve years. The earliest reference to Dr. Dennison in the record, however, is a copy of a letter to the attorney who represented Mischler on her previous application dated June 2, 2008, shortly before the hearing on that application before ALJ Kays. R. 169. The letter states that Mischler suffers from "significant depression" manifested by "a general loss of interest in most activities, appetite and sleep problems, and significant psychomotor retardation." *Id.* It further states that Mischler is "unable to function adequately in her previous role as homemaker and assistant in the family business," "she is unable to get out and socialize to any degree and is generally very restricted in what she can do on a daily basis." *Id.* Finally, Dr. Dennison noted that the severity of Mischler's condition has "continued relatively unabated and even advanced somewhat for at least the last 2-1/2 to 3 years." *Id.*

The ALJ took note of the June 2008 letter by Dr. Dennison, but gave it little weight because it predated the application by several years. (SSI benefits are not payable prior to the month after the month in which the application is filed. 20 C.F.R. § 414.335.) The ALJ also gave the letter little weight because there were no associated medical records to corroborate Dr. Dennison's statements. R. 26. In fact, it appears that once her previous application for SSI was granted by ALJ Kays in September 2008, Mischler did not return to Dr. Dennison for treatment until after she filed her new application for benefits in October 2013. Indeed, as the ALJ noted, Mischler did not even mention a mental impairment in the application for benefits she filed on October 25, 2013. R. 27. The earliest treatment record from Dr. Dennison that appears in the record is dated March 25, 2014. R.

5

892. Dr. Dennison notes at the outset that "the patient has not been seen in some time." *Id.* At that time, Mischler told Dr. Dennison that she had been having "a great deal of trouble with her husband" and was filing for divorce. She also mentioned that she had lost her disability for a while but was "fighting that." *Id.* Dr. Dennison listed impressions of Dysthymic disorder, chronic pain and anxiety disorder. She discontinued the Xanax Mischler had been taking and replaced it with Klonopin and told her to return in a couple of months. *Id.*

From the date she re-established treatment with Dr. Dennison in March 2014, until her hearing on December 2, 2015, it appears that Mischler saw Dr. Dennison for medication management and on occasion a therapist. On December 8, 2015, Dr. Dennison completed a medical source statement in which she suggests Mischler can only work one to two hours per day. R. 1105. Dr. Dennison noted Mischler had moderate limitations in her ability to follow rules, use judgment, follow simple job instructions, and maintain personal appearance. She also reported Mischler had marked limitations in her ability to relate to co-workers, deal with the public, deal with work stress, function independently, maintain attention/concentration, follow complex job instructions, behave in an emotionally stable manner, and relate predictably in social situations. R. 1105–06. She commented that Mischler has difficulty with focus, is easily flustered, is often anxious and emotional, and has much self doubt. *Id.* Despite these concerns, Dr. Dennison found Mischler could control her own finances. R. 1107. The ALJ gave limited weight to this opinion to the extent it is consistent with treatment records. R. 27. Mischler asserts the ALJ erred in his assessment.

A treating source's opinion is entitled to "controlling weight" if it is adequately supported by objective medical evidence and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). If the ALJ discounts a treating physician's opinion, he must offer "good

6

reasons" for doing so. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). The ALJ must determine the opinion's weight using the factors listed in § 404.1527(c), including the "length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Campbell*, 627 F.3d at 307 (quoting *Larson*, 615 F.3d at 751). Although the ALJ is not required to explicitly weigh every factor listed in the regulations, he must sufficiently account for them. *See Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013); *Henke v. Astrue*, 498 F. App'x 636, 640 (7th Cir. 2012); *see also* SSR 06–03p (noting that "there is a notable distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision").

Mischler claims the ALJ failed to apply the appropriate standards in his evaluation of Dr. Dennison's opinion. As an initial matter, Mischler argues the ALJ did not note any diagnostic tests Dr. Dennison used in evaluating her symptoms. This argument is a non-starter. Dr. Dennison did not indicate that she used medically acceptable clinical and laboratory diagnostic tests to support her opinion. The ALJ can hardly be faulted for not considering something that does not exist within the record. Instead, the ALJ offered other reasons for giving Dr. Dennison's opinion "limited weight."

The ALJ determined the extreme limitations Dr. Dennison placed on Mischler found no support in the medical evidence. Dr. Dennison does not explain anywhere in her report how she arrived at her opinion that Mischler could only work one to two hours a day or how she determined her limitations. The ALJ noted Mischler's Global Assessment of Functioning (GAF) score of 60 was inconsistent with Dr. Dennison's finding that Mischler had marked limitations in eight areas. R. 957. A GAF score in the range of 51–60 denotes either moderate symptoms or a moderate difficulty in

social or occupational functioning. This level of functioning is in stark contrast to the extreme limitations Dr. Dennison assessed.

The ALJ also found the assessment was inconsistent with Dr. Dennison's own examinations and treatment notes. The ALJ observed that Mischler's depression and anxiety increases during times of situational stress. In the year Dr. Dennison treated Mischler, Mischler was separating from her husband, leaving a possessive boyfriend, attempting to relocate her husband from a nursing home to their family home, worrying about losing her home because her husband had failed to pay their taxes, and realizing her husband had misrepresented their finances. R. 26. Even with these stressors, however, Mischler reported she was "okay" and did not feel hopeless, and responded well to changes in her medication. R. 949. Dr. Dennison occasionally observed that Mischler's affect was depressed or flat and noted Mischler's judgment and insight were fair, but she never reported any memory or orientation problems. She routinely noted Mischler did not have any difficulty focusing on the conversation at hand; the volume, rate, and rhythm of her speech were within normal limits; she answered questions in a logical, sequential, and goal-oriented fashion; and she was adequately groomed. Notwithstanding these findings, Dr. Dennison concluded Mischler had moderate limitations in her ability to follow rules, use judgment, follow simple job instructions, and maintain personal appearance and had marked limitations in her ability to relate to co-workers, deal with the public, deal with work stress, function independently, maintain attention/concentration, follow complex job instructions, behave in an emotionally stable manner, and relate predictably in social situations. R. 1105–06.

The ALJ noted Dr. Dennison's opinion was more extreme than the medical record warranted. He appropriately relied on the objective medical evidence and the lack of any support in Dr.

8

Dennison's own records to discount her opinions about Mischler's limitations. He also took into consideration the fact, as noted above, that Mischler had not even listed a mental impairment as a cause of her disability in her application and did not re-establish treatment with Dr. Dennison until months later. He also thought it significant that at the hearing, Mischler "did not speak much of her psychiatric condition other than to state that things are 'really stressful right now.'" R. 27. Indeed, the fact that Mischler's testimony at the hearing centered primarily on her alleged physical impairment, despite the absence of any credible evidence of the symptoms she alleged, provides strong support for the ALJ's more general conclusion that "[t]he records depict the claimant as an individual whose main priority is obtaining disability benefits." R. 30.

In short, nothing in the medical record supports the substantial limitations Dr. Dennison reported in December 2015. The ALJ provided sensible grounds for giving limited weight to Dr. Dennison's opinion and provided "an accurate and logical bridge" between the evidence and his conclusions. *Roddy*, 705 F.3d at 636. The ALJ's opinion is supported by substantial evidence and will be affirmed.

**B. RFC and Hypothetical Question**

Mischler also argues the ALJ erred by failing to incorporate all of her limitations in the RFC assessment and the hypothetical question posed to the VE. She claims, in particular, that the ALJ failed to account for her deficits in concentration, persistence, or pace (CPP). An ALJ's RFC assessment and hypothetical question to the VE "must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)). It is important to emphasize

however, that while the Agency must consider opinions from medical sources, "final responsibility" for determining a claimant's RFC is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2).

At steps two and three, the ALJ accepted and adopted the opinion of the state agency psychological consultant, Dr. Ellen Rozenfeld, and concluded Mischler had mild restriction in activities of daily living, mild difficulties in social functioning, and moderate difficulties with CPP. R. 27. Dr. Rozenfeld found that Mischler was moderately limited in her ability to carry out detailed instructions and to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. R. 91. She noted that Mischler's ability to carry out tasks with adequate persistence and pace would be moderately impaired but would be adequate for completion of one to three step tasks. *Id.* As to social functioning, Dr. Rozenfeld concluded Mischler was moderately limited in her ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavior extremes. R. 91–92. She explained that although Mischler's ability to interact and get along with the general public, coworkers, and supervisors is moderately limited, her social functioning is adequate for occasional contact. R. 92. Dr. Rozenfeld also determined Mischler was moderately limited in her ability to respond appropriately to changes in the work setting but observed that Mischler's "ability to handle stress and changes in the work place would be reduced but adequate to tolerate occasional work place changes." *Id.* In summary, Dr. Rozenfeld concluded Mischler "retains the ability to perform 1 to 3 step tasks on a sustained basis in a work setting with occasional contact with others and occasional work place changes." *Id.*

Although Dr. Rozenfeld indicated Mischler was "moderately limited" in several areas, R. 91–92, she did not conclude that Mischler was unable to carry out the listed functions. Based upon Dr. Rozenfeld's assessment, as well as the entire record, the ALJ found that Mischler had the RFC to perform a range of light work that was limited to "simple, routine, repetitive tasks in a low stress job (defined as one with only occasional decision making or changes in the work setting required); only occasional interaction with the public and coworkers (with no tandem tasks); no piece work or assembly line-type work; and must be allowed to be off task up to 10 percent of the work day, in addition to regularly scheduled breaks." R. 28.

The ALJ did not explicitly mention every area in which Dr. Rozenfeld noted Mischler was moderately limited, but the RFC appears to capture the limitations she found. Relying on *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015), Mischler argues that limiting her to "simple, routine, repetitive tasks" does not adequately address her CPP limitations. In *Varga*, the Seventh Circuit held that limiting an individual to "unskilled work" involving "simple, routine, or repetitive tasks" did not adequately capture the limitations of a claimant with moderate difficulties in CPP. 794 F.3d at 814–15. But in *Varga*, there was no narrative translation by the medical expert in the record that explained what such a limitation actually meant. *Id.* at 816. This omission was significant. The Court expressly noted that "in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations." *Id.* (citing *Johansen v. Barnhart*, 314 F.3d 283, 286 (7th Cir. 2002)).

Here, by contrast, as noted above, the narrative explanation that was missing in *Varga* was supplied by Dr. Rozenfeld in the detailed Mental Residual Functional Capacity (MRFC) Assessment form she completed. R. 91–2. The ALJ essentially adopted Dr. Rozenfeld's opinion in formulating

11

Mischler's mental RFC. And unlike *Varga*, the ALJ did not simply limit Mischler to "simple, routine, repetitive tasks." Dr. Rozenfeld had defined more precisely what the moderate limitations she found actually meant in terms of Mischler's ability to perform work-related activities. The ALJ then carefully formulated a RFC that incorporated those limitations. He ruled out piece work and assembly-line work, limited decision-making and changes within the work setting, as well as interaction with the public and co-employees, and determined it would be appropriate to accommodate Mischler's difficulty in CPP by limiting her to work that allowed her to be off task up to 10 percent of the work day and to take regularly scheduled breaks. R. 28.

The ALJ's determination of Mischler's RFC is well supported by Dr. Rozenfeld's opinion. Mischler challenges the ALJ's 10 percent off-task limitation on the ground that the ALJ "never articulated what evidence supported that conclusion or provided a rationale as to how he arrived at 10%." ECF No. 11 at 18. What she fails to realize, however, is that the ALJ's finding of an off-task limitation of up to ten percent of the work day is based on his judgment as to the severity of her mental impairment, not a mathematical measurement. *See Brandenburg v. Colvin*, No. 14-CV-835, 2015 WL 4755740, at *12 (E.D. Wis. Aug. 11, 2015). Mischler's argument assumes a precision that this kind of limitation does not allow. A time-off-task limitation sufficiently reflects the degree to which the ALJ concluded the claimant may be off task each day due to her mental impairments and allows the VE to assess whether the claimant would be able to perform full-time work. *See Finzel v. Colvin*, No. 15-C-98, 2015 WL 4877412 (E.D. Wis. Aug. 14, 2015); *Ambelang v. Colvin*, No. 12-cv-805, 2014 WL 4926191 (W.D. Wis. Sept. 30, 2014). While Mischler challenges the ALJ's off-task limitation, she identifies no evidence suggesting that she would be off task more than 10 percent of the work day. Instead, the ALJ's 10 percent time-off-task limitation reflects a

reasonable judgment of the impact Mischler's difficulty concentrating might have on her ability to work.

The ALJ also indicated his review of the medical evidence demonstrated exacerbations in Mischler's mood during times of situational stress. R. 26. Given the fact that Mischler lives independently, attends multiple medical appointments, manages her own medical care and finances, dealt with divorce and a possessive boyfriend, and moved at least twice, he noted her ability to function exceeds her claims. R. 27. The ALJ did not find any evidence demonstrating that Mischler's CPP was impaired to the extent that she could not work and created an RFC reflecting her abilities.

Mischler seems to assume that the term "moderate" must itself be included in the RFC. It is difficult to see, however, how that would add any clarity either for the VE who is asked to identify any jobs that a person of the claimant's age, education and work experience with such an RFC could perform, or for the court asked to review the ALJ's decision. To say that a person may have "moderate" limitations or difficulties in performing some task isn't the same as saying the person can't perform such tasks. It is important to keep in mind that the RFC is the most the claimant can do despite her limitations, and it is the ALJ's responsibility to determine that RFC. 20 C.F.R. §§ 404.1545(a); 404.1527(d)(2). Here, the ALJ concluded that despite Mischler's moderate limitations in certain functional areas, she could nevertheless hold the jobs that VE identified.

This conclusion is not unreasonable, especially when one considers that the term "moderate" is intended to mean that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66164 (Sept. 26, 2016) (effective January 17, 2017). Though the

revised regulations became effective after the ALJ held the administrative hearing in this case, this definition is "consistent with how [the SSA's] adjudicators have understood and used those words in [the SSA's] program since [the SSA] first introduced the rating scale in 1985." 81 Fed. Reg. 66147. As a result, the definition set forth in the new rules does "not represent a departure from prior policy." *Id.* In other words, finding that a claimant is moderately limited does not mean that she cannot perform an activity; it simply means it may be harder for her than if she had no limitation. Given this understanding of the term "moderate," the ALJ's RFC and corresponding hypothetical question put to the VE adequately captured the limitations he found from the evidence. If Mischler's ability to function within the limitations stated by the ALJ on a sustained basis was "fair," it was not unreasonable for the ALJ to conclude she was not so incapacitated that she could not hold any job. Substantial evidence supports the ALJ's RFC finding, and the ALJ adequately explained how he arrived at that conclusion.

## CONCLUSION

For the reasons given above, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

Dated this   23rd   day of January, 2018.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court